UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NEHEMIAH NASH,


                                        Plaintiff,

                                                          DECISION AND ORDER

                                                          04-CV-6089L


                        v.

MICHAEL MC GINNIS,
STANLEY SEPIOL,
JAMES P. MEEHAN,
GREGORY T. MANOS,
MARK J. SHEREMETA,
RAYMOND R. KEENAN,
DOUGLAS D. WESTERVELT,
KATHLEEN A. WASHBURN,
C.O. COLLINS,
LARRY C. GLEASON,
CHRISTOPHER F. KAMAS,
LIEUTENANT AUGUSTINE,
ANGELA BARTLETT,
SUPERINTENDENT ARTUS,



                                        Defendants.
_____


        Plaintiff, Nehemiah Nash, appearing *pro se*, commenced this action under 42 U.S.C.

§ 1983.  Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS"), alleges that his constitutional rights were violated in a number of ways

during his confinement at the Southport and Clinton correctional facilities, and at DOCS's

Central New York Psychiatric Center ("CNYPC").

Defendants have moved to dismiss most of plaintiff's claims pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  For the following reasons, the motion is granted.

**DISCUSSION**

**I. Motions to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) motions are now analyzed under a slightly different standard than they were

prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___,

127 S.Ct. 1955 (2007).  Prior to *Twombly*, courts would generally deny a motion to dismiss if

there were "any set of facts" consistent with the allegations of the complaint that would entitle

the plaintiff to relief.  *See*, *e.g.*, *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995);

*Gilmore v. University of Rochester*, 410 F.Supp.2d 127, 131 (W.D.N.Y.  2006).

In *Twombly*, however, the Supreme Court declared that the "any set of facts" standard had

"earned its retirement."  127 S.Ct. at 1969.  The Court explained that to defeat a motion to

dismiss, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do.  Factual allegations must be enough to

raise a right to relief above the speculative level."  *Id.* at 1964-1965 (citations omitted).

Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to

plausible, [his] complaint must be dismissed."  *Id.* at 1974.  A "plausible" entitlement to relief

exists, then, when the allegations in the complaint move the plaintiff's claims across the line

separating the "conclusory" from the "factual," and the "factually neutral" from the "factually

suggestive." *Id.* at 1966 n. 5.

"[T]his plausibility standard governs claims brought even by *pro se* litigants." *Robles v.*

*Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at *5 (N.D.N.Y. Oct. 22, 2008) (citing *Jacobs v.*

*Mostow*, 281 Fed.Appx. 85, 87 (2d Cir. 2008), and *Boykin v. KeyCorp*, 521 F.3d 202, 215-16 (2d

Cir. 2008)).  At the same time, however, the Court is mindful that even after *Twombly*, a

"document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Boykin*, 521 F.3d at 214.  Nevertheless, all pleadings, *pro se* or otherwise, must contain enough

factual allegations to "give the defendant fair notice of what the ... claim is and the grounds upon

which it rests." *Id.* (quoting *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007))

(additional internal quotation marks omitted).  With that standard in mind, I turn to the several

claims asserted in the complaint and to defendants' motion.


## II. Plaintiff's Claims

### A. Eighth and Ninth Amendment Claims

In most of his causes of action, plaintiff alleges that defendants violated his rights under

the Eighth and Ninth Amendments to the United States Constitution.  All such claims in this

action must be dismissed.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  The "cruel and unusual punishments" clause protects inmates from the use of excessive force and from prison officials' deliberate indifference to inmates' serious medical needs.  *See*, *e.g.*, *Hemphill v. New York*, 380 F.3d 680, 681 (2d Cir. 2004); *Thompson v. Maldonado*, 309 F.3d 107, 108-09 (2d Cir. 2002). None of Nash's allegations relate to any such acts, however.  No physical injury of any kind is alleged in Nash's complaint.

Likewise, Nash's allegations do not implicate the Ninth Amendment, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  Neither the Eighth nor the Ninth Amendment has anything to do with plaintiff's factual allegations.

## B. Southport Claims

Nash alleges that on July 13, 2004, defendant Washburn wrote a false misbehavior report against plaintiff.  Nash appears to allege that Washburn did so for retaliatory reasons stemming from an ongoing dispute that Nash had been having with Washburn and several other DOCS employees at Southport concerning plaintiff's use of the mails and defendants' alleged interference with his incoming and outgoing mail.[1]  Plaintiff alleges that Washburn filed this

---

[1]Defendants' alleged interference with Nash's mail is also asserted as a claim in plaintiff's first cause of action.  It does not appear that defendants are moving to dismiss that claim at this time.

This Court has previously found that "[p]laintiff sufficiently alleges [at the pleading stage] that defendants regularly and deliberately interfered with his mail without justification,"

(continued...)

false report "under the authority of defendant Bartlett," who is alleged to have been the Assistant Deputy Superintendent of Programs at Southport.  Amended Complaint (Dkt. #49) at 5 ¶ 16.

This claim must be dismissed.  "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process ... ."  *Faison v. Janicki*, No. 03-CV-6475, 2007 WL 529310, at *4 (W.D.N.Y. Feb. 14, 2007) (citing *Freeman v. Rideout*, 808 F.2d 949, 952 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)).  *See also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

Plaintiff's allegation that Washburn filed the report out of retaliatory animus does not save this claim.  "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, [the Second Circuit has been] careful to require non-conclusory allegations."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted); *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone").  Plaintiff has failed to present anything other than conclusory allegations in support of this claim.  This claim is therefore dismissed.  *See*, *e.g.*, *Benitez v. Locastro*, No. 9:04-CV-423, 2008 WL 4767439, at *9

---

[1](...continued)
315 F.Supp.2d 318, 320 (W.D.N.Y. 2004), although that conclusion was reached under the pre-*Twombly* standards, under which a claim would be found to be adequately pleaded "unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 319 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  As stated, that standard was "retired" by the Supreme Court in *Twombly*.  *See* 127 U.S. at 1969.  The Court expresses no opinion at this time whether the mail-interference claim meets the pleading standards under *Twombly*.

(N.D.N.Y. Oct. 29, 2008); *Snyder v. McGinnis*, No. 03-CV-902, 2007 WL 3274691, at *9-*10 (W.D.N.Y. Nov. 2, 2007).

Furthermore, as to defendant Bartlett, there is no showing that Bartlett had any personal involvement in the actions complained of and, therefore, the complaint should be dismissed on that ground as to Bartlett as well.  In any action under § 1983, the plaintiff must establish each defendant's personal involvement in the alleged constitutional deprivation in order to hold that defendant liable.  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  *See also Liner v. Goord*, ___ F.Supp.2d ___, 2008 WL 4560093, at *1 (W.D.N.Y. 2008) (listing ways in which supervisory official may be personally involved in constitutional violation).

The mere allegation that Washburn acted "under the authority of defendant Bartlett" is not enough to state a claim against Bartlett.  *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (plaintiff "must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"), *cert. denied*, 525 U.S. 1154 (1999); *Larkins v. West*, No. 06-CV-6222, 2008 WL 4516239, at *3 (W.D.N.Y. Oct. 2, 2008) (finding that complaint failed to state a claim that DOCS commissioner was personally involved in alleged constitutional violations); *Martino v. Westchester County Dep't of Corrections*, No. 06 Civ. 9900, 2008 WL 144827, at *3 (S.D.N.Y. Jan. 15, 2008) (dismissing claims against county "warden" and assistant warden where there were "no allegations ... of any conduct" by defendants, who could "not be held liable merely because they were supervisors or occupied a high position").

For the same reasons, all of plaintiff's claims against defendant Michael McGinnis, who at all relevant times was the Superintendent of Southport, must be dismissed.  Plaintiff alleges that McGinnis was "made aware of the chain of events and did, nothing [sic] to curb or discourage the behavior" of the other defendants.  Amended Complaint at 7 ¶ 22.  Although plaintiff need not plead facts in great detail, the formulaic allegation that McGinnis was aware of the alleged violations and did nothing to stop them from occurring, without *some* factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that McGinnis was personally involved in the alleged constitutional deprivations.  *See Castillo v. Commissioner New York State DOCS*, Slip Copy, 2008 WL 4501881, at *2 (W.D.N.Y. Sept. 30, 2008) (dismissing claims for failure to allege personal involvement, since "[p]laintiff's theory of liability appears to be grounded simply upon the fact that the defendants were in charge of the prison").

**C. Clinton Claims**

Nash alleges that "[f]rom [his] initial intake at Clinton, plaintiff suffered from an array of ongoing harassment from Correctional Officers and Medical Staff alike."  Amended Complaint at 15 ¶ 7.  Nash also alleges that he filed "[a] number of grievances and formal complaints" about that harassment, and that in retaliation for those grievances and complaints, he was transferred from Clinton to the psychiatric facility at CNYPC.  Nash further alleges that his personal property was not sent on with him to CNYPC, but was deliberately lost or destroyed.  The only

defendant named in connection with these allegations is defendant Dale Artus, the

Superintendent of Clinton Correctional Facility.

These claims are dismissed.  First, plaintiff's conclusory allegation of "an array of

ongoing harassment" fails to state a cognizable constitutional claim.  Plaintiff does not allege

how he was harassed or by whom, and it is therefore impossible for the Court or defendants to

determine the nature or factual basis of this claim.[2]  *See Twombly*, 127 S.Ct. at 1964-65

(plaintiff's factual allegations must be detailed enough to give the defendant fair notice of what

the claim is and the grounds upon which it rests).

With respect to plaintiff's property claim, it appears from plaintiff's allegations that the

alleged loss or destruction of his property, even if intentional, was nevertheless a random,

unauthorized act by state employees.  It is well settled that "[w]here a deprivation at the hands of

a government actor is 'random and unauthorized,' hence rendering it impossible for the

government to provide a pre-deprivation hearing, due process requires only a post-deprivation

proceeding."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Parratt v. Taylor*,

451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327

(1986)), *cert. denied*, 541 U.S. 988 (2004); *see also Hudson v. Palmer*, 468 U.S. 517, 534 (1984)

(only post-deprivation remedy was required following intentional destruction of an inmate's

personal property by a prison guard, because the state was not "in a position to provide for

predeprivation process").  The Second Circuit has held that New York provides an adequate

---

[2]In that regard, the Court notes that not all acts falling under the rubric of "harassment"
are actionable under § 1983.  *See, e.g.*, *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)
(verbal harassment is not actionable under § 1983) (per curiam).

post-deprivation remedy in the Court of Claims with respect to property claims by prison

inmates; *see Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207,

209 (2d Cir. 1983).  Plaintiff's due process claim based on the alleged loss of his property must

therefore be dismissed.

To the extent that plaintiff alleges that defendants deliberately destroyed his property to

retaliate against him for having complained of harassment, his claim is also dismissed.  As with

his retaliation claim against Washburn, Nash has advanced nothing more than conclusory

allegations in support of his assertion that defendants lost, destroyed, confiscated, or otherwise

deprived him of his property to retaliate against him because of his prior complaints.  Even

giving the amended complaint a generous construction, there is simply no reasonably plausible

nexus between the complaints that Nash made about his treatment at Clinton and the

disappearance of his property after his transfer to CNYPC.  *See Sawyer v. Jowers*, No.

2:08-CV-0186, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of

retaliation, the inmate must allege more than his personal belief that he is the victim of

retaliation.  Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege

facts] from which retaliation may plausibly be inferred"); *Johnson v. Cannon*, No.

1:08-cv-00046, 2008 WL 4104274, at *4 (E.D.Cal. Sept. 2, 2008) (dismissing inmate's claim

that defendant refused to return to plaintiff his "legal property" out of retaliation for his pursuit of

other litigation, since the complaint was "devoid of any facts which support a retaliatory motive

on Defendant's part").

In his allegations concerning the Clinton claims, plaintiff also alleges, in conclusory fashion, that the alleged deprivation of his property violated his right to equal protection.  In order to plead a facially valid equal protection claim, however, plaintiff must allege:  (1) that he has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right.  "Conclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient." *Colquitt v. Anderson*, No. 2:05-cv-413, 2008 WL 4097715, at *8 (M.D.Fla. Sept. 2, 2008) (citing *Sweet v. Secretary Dep't of Corrections*, 467 F.3d 1311, 1319 (11th Cir. 2006), *cert. denied*, 510 U.S. 1170, (2007)).  *See also Harris v. Alves*, No. CV-06-5068, 2008 WL 2116407, at *10 (E.D.Wash. May 19, 2008) ("an equal protection claim under § 1983 must allege *intentional* discrimination on the basis of membership in a protected class").  Since Nash has not alleged that similarly situated inmates were treated differently in this regard, or that any difference in treatment was attributable to plaintiff's membership in some protected class, this claim also fails.

In addition, plaintiff pleads no facts showing that Artus was personally involved in any way in the loss of Nash's property.  This claim must be dismissed against Artus for that reason as well.  *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (affirming dismissal of prisoner's retaliation claim where complaint did not "contain[] any allegations that associate [defendants] with any of the retaliatory conduct that Douglas alleged"); *Brown v. Magnusson*, No. CV-07-61, 2008 WL 4657810, at *12 (D.Me. Oct. 17, 2008) (dismissing inmate's retaliation claim that was based on "nothing more than rank speculation that any of these four defendants

partook in retaliatory acts"). Since Artus is the only named defendant on the Clinton claims (which are facially meritless in any event), they are dismissed in their entirety.[3]

**D. CNYPC Claims**

Nash alleges that during his confinement at CNYPC, two unidentified "John Doe" defendants intentionally failed to send two pieces of mail that plaintiff had submitted for mailing, which were addressed to the United States Supreme Court. Amended Complaint at 7 ¶ 23. Plaintiff alleges that defendant H. E. Smith, the Executive Director of CNYPC, "encouraged, directed, ratified, and knowingly acquiesced" in those actions. *Id.* at 8 ¶ 26.[4]

This claim must be dismissed. First, as with plaintiff's claims against Bartlett, McGinnis, and Artus, plaintiff has failed to allege facts showing that Smith was personally involved in the

---

[3]Although plaintiff does not expressly assert a claim of denial of access to the courts in connection with the loss of his property, he does allege that the lost property included "legal property" that he needed for "an assortment of open and pending litigation ... ." Amended Complaint at 15 ¶¶ 8, 9. To the extent that the complaint could be read as asserting a claim alleging denial of access to the courts, such a claim fails because plaintiff has not alleged that the denial of his "legal property" resulted in any actual injury with respect to any litigation. *See Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("in order to press a claim for interference with the right to court access, a prisoner plaintiff must allege that he or she has been actually injured in his or her access to the courts, *i.e.*, that he or she has been hindered in an effort to pursue a nonfrivolous legal claim") (citing *Lewis v. Casey*. 518 U.S. 343, 349-53 (1996)); *accord Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998); *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997).

[4]For reasons that are not apparent, Smith, who was named for the first time in Nash's amended complaint, has never been served in this action. In fact, it appears that a summons was never issued for him and that service on Smith has never even been attempted. Because I find that plaintiff's CNYPC claims must be dismissed in any event, however, the failure to effect service on Smith is of no consequence here.

alleged constitutional deprivation.  The conclusory allegation that Smith ratified the acts complained of is insufficient.

Second, plaintiff has failed to plead a facially valid claim in the first place.  As stated, to plead a claim for denial of the constitutional right of access to the courts, a plaintiff must allege actual injury, in the sense that he was prejudiced, by the defendants' actions, in the pursuit of some nonfrivolous claim.  *Collins v. Goord*, ___ F.Supp.2d ___, 2008 WL 4369274, at *7 (S.D.N.Y. 2008).  Plaintiff has not alleged how the failure to mail two items of correspondence to the Supreme Court hampered his prosecution of any colorable claim.

Nash's allegations also fail to support a claim that defendants violated his right to the "free flow" of mail.  *See Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  Although the Second Circuit has stated that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received," *Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)), the court in *Davis* noted, with apparent approval, that "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.* (citing cases).

The Court of Appeals went on to hold that "Davis' allegations of two instances of mail interference are insufficient to state a claim for denial of access to the courts because Davis has

- 12 -

not alleged that the interference with his mail either constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any way prejudiced his legal actions." *Id.* at 352. The court added that "Davis fails to state a constitutional claim for violating his right to send and receive legal mail because he alleges neither the establishment of an ongoing practice by prison officials of interfering with his mail nor any harm suffered by him from the tampering." *Id.*

In the case at bar, plaintiff alleges only two instances at CNYPC of interference with his outgoing legal mail. As stated, there is no indication that plaintiff suffered actual harm as a result, or that this constituted an ongoing practice at CNYPC. Plaintiff's CNYPC claim is therefore dismissed in its entirety.[5]

## E. Official-Capacity Claims

Plaintiff states in the amended complaint that "[e]ach defendant ... is sued in both their individual and official capacity." Amended Complaint at 3 ¶ 6. To the extent that defendants are named in their official capacities, all such claims are dismissed. Claims against state employees in their official capacity are deemed claims against the state itself, and are barred by the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Dube v. State Univ. of New*

---

[5]As stated, *see* n., 1 *supra*, plaintiff's claim alleging interference with his mail at Southport is not addressed in defendants' motion, and the Court expresses no opinion at this time as to the merits of that claim. I note, however, that the allegations concerning the CNYPC mail claim are far sparser than those alleged with respect to the Southport claim, in which plaintiff alleges not only failure to send and deliver plaintiff's mail, but also confiscation of stamps and threats directly relating to his use of the mails.

*York*, 900 F.2d 587, 594-95 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991); *Brown v. New York State DOCS*, ___ F.Supp.2d ___, 2008 WL 4737224, at *3 (W.D.N.Y. 2008).

**F. Failure to Allege Physical Injury**

Section 1997e(e) of Title 42 provides that "[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." That provision bars recovery of compensatory damages for mental and emotional injuries, absent physical injury, in § 1983 actions. *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) ("we conclude that Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations"); *accord Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), *cert. denied*, 544 U.S. 1061 (2005); *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001); *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000); *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C.Cir. 1998).

In the case at bar, plaintiff does not allege that he suffered any physical injury on account of the acts of defendants. Given the nature of the alleged constitutional violations here, there is also no reason to think that plaintiff might have suffered any physical injury. Accordingly, plaintiff's claims for compensatory damages must be dismissed.

**CONCLUSION**

Defendants' motion to dismiss certain claims (Dkt. #58) is granted, and the following claims are dismissed:  plaintiff's claims under the Eighth and Ninth Amendments; plaintiff's claim alleging the issuance of a false misbehavior report by defendant Washburn; plaintiff's claim relating to the alleged loss or destruction of his personal property; all of plaintiff's claims against defendants McGinnis, Bartlett, and Artus; all of plaintiff's claims arising out of his confinement at Clinton Correctional Facility and the Central New York Psychiatric Center; all of plaintiff's claims against defendants in their official capacities; and plaintiff's claims for compensatory damages.

The only remaining claim at this time is plaintiff's claim alleging interference with his mail during his confinement at Southport Correctional Facility, against defendants Sepiol, Meehan, Manos, Sheremeta, Keenan, Westervelt, Washburn, Collins, Gleason, Kamas, and Augustine, but compensatory damages are precluded on this claim as well. Only nominal damages or injunctive relief could be awarded if plaintiff should prevail.

Plaintiff's motion for a stay (Dkt. #53) and his motion for an injunction (Dkt. #75) are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      November 13, 2008.